GUSTAV W. LEMBECK

*v.*

JARVIS TERMINAL COLD STORAGE COMPANY.

[Argued June 28th, 1905.   Decided March 5th, 1906.]

1. Where freight charges are due from a consignor to a carrier, the carrier's lien for the charges is terminated by its delivery of the goods to the consignee, as the agent of the consignor, notwithstanding the fact that the consignee promises to do everything in his power to retain the goods until the charges are paid.

2. Where the carrier delivers goods to a consignee, upon his promise to retain possession of them until the freight charges are paid by consignor, if the delivery and promise are to be considered as making the consignee the agent of the carrier, so far as the possession of the goods is concerned, then the lien for freight charges is terminated upon their payment by the consignor to the consignee.

On appeal from a decree in chancery advised by Vice-Chancellor Garrison, whose opinion is reported in *68 N. J. Eq. 492.*

*Messrs. Collins & Corbin,* for the appellant.

*Mr. Frank E. Loughran,* for the defendant.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

Gardemann & Jungclaus, wholesale produce dealers, shipped from their place of business in Iowa three cars of poultry and dairy products to the Jarvis Terminal Cold Storage Company, at Jersey City, to be held by that company in its warehouse, subject to the order of the shippers. The goods reached Jersey City over the line of the Erie Railroad Company, and were delivered by that company to the Cold Storage Company, the consignee, without collecting the freight charges thereon either

from the consignor or the consignee. At about the time of the delivery (whether just before or just after the cars were run upon the siding of the storage company is uncertain), the superintendent of the storage company agreed with the railroad company's local agent, at the latter's request, that he would do everything in his power to see that the consigned property was not moved from the storage company's warehouse until the freight charges had been satisfied to the railroad company. Between two and three weeks after the arrival of the first car, and while the contents of the cars were still in the warehouse at Jersey City, Gardemann & Jungclaus procured to be discounted at the Third National Bank of Jersey City their promissory note for $5,743, secured by a warehouse receipt upon the goods consigned. Of the proceeds of this note, $5,000 went to the makers and the rest went to the Cold Storage Company to pay the freight and insurance charges upon the consignment. Subsequently, and while the consignment was still in its possession, and while it still retained the moneys paid to it in settlement of the freight charges, the Cold Storage Company was adjudged to be insolvent upon proceedings taken against it in the court of chancery, and a receiver was appointed. After the appointment of the receiver a company known as the Western Cold Storage Company, which had in the meantime purchased the consigned poultry and dairy products from Gardemann & Jungclaus, began their removal from the Jarvis company's warehouse. Upon learning of this fact the railroad company protested to the receiver against the removal of the goods until its freight charges had been satisfied, claiming that it had a lien upon the goods until that was done. Thereupon the receiver refused to permit the Western Cold Storage Company to take away from the storehouse any more of the consignment until the claim of the railroad company was disposed of. Negotiations between the railroad company and the eastern agents of the Western Cold Storage Company resulted in the deposit by the latter with the receiver of the sum of $743, under a stipulation between the parties by the terms of which the deposit was to stand in lieu of the goods, and was to be held by the

receiver until it should be determined by the court of chancery whether or not the railroad company had a lien for its freight charges upon those goods. If it was determined by the court that the railroad company had such lien, the deposit was to be held subject thereto; and if it was determined that no lien existed, the deposit was to be returned to the agents of the Cold Storage Company. The matter was then submitted to the court by prepared pleadings filed in the insolvency proceedings, and upon the hearing it was decreed that the railroad company had no lien, and that the agents of the Western Cold Storage Company were entitled to the return of their deposit. From that decree the railroad company appeals.

In our opinion, the facts recited justified the decree appealed from. The delivery of the consigned goods by the railroad company to the Jarvis company was made to the latter either as the agent of the owners, Gardemann & Jungclaus, or as the agent of the railroad company. If the Jarvis company received the goods as the agent of the owners, then the common law lien of the railroad company for its freight charges was thereby terminated, notwithstanding the fact that the superintendent of the Jarvis company promised to see to it, so far as he was able, that the goods should not be removed from the company's warehouse until those charges were paid. A carrier is entitled to retain the goods until his charges are paid, but if he sees fit to deliver them to the owner before receiving payment, he thereby relinquishes his right to pursue the goods, and must look for payment to the person liable for the freight charges. That this is the settled rule is abundantly shown by the authorities collected in the opinion of the learned vice-chancellor who heard the case in the court below. On the other hand, if the Jarvis company received the goods from the railroad company as the agent of the latter, and retained the possession of them as such agent pending the payment of the freight charges, then the payment to it of those charges by Gardemann & Jungclaus was a payment to its principal, the railroad company, and terminated the carrier's lien.

The decree appealed from should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GRAY —10.

*For reversal*—None.